IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

LYNELLE DAVIS,

      Plaintiff,

v.                              CIVIL ACTION NO.: CV506-032

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge J. Richard Stables ("the ALJ" or "ALJ Stables") denying her claim for Supplemental Security Income benefits. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or in the alternative, to remand the case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff filed an application for Supplemental Security Income payments on January 2, 2004, with a protective filing date of December 10, 2003, alleging that she became disabled on March 15, 2002, due to colon cancer, a heart murmur, high blood pressure, and a hiatal hernia.[1] (Tr. at 13). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On September 16, 2005, ALJ Stables conducted a hearing at which Plaintiff appeared and testified. Ronald

---

[1] ALJ Stables pointed out that Plaintiff seemed to claim she was disabled based on different conditions at the initial and reconsideration levels and at the hearing he conducted. (Tr. at 13-14).

Spitznagel, a vocational expert, also testified at this hearing. ALJ Stables found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 12). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 4).

Plaintiff, born on February 11, 1960, was forty-five (45) years old when ALJ Stables issued his decision. She has a high school education. (Tr. at 12). Her past relevant work experience includes employment as a cashier. (Tr. at 18).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is

presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of March 15, 2002, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 18). At Step Two, the ALJ determined that Plaintiff's mild, recurrent major depressive order, a personality disorder NOS, status-post rectal cancer, status post surgery (low anterior resection), and status-post surgical repair of ventral incisional hernia were severe impairments. However, the ALJ also determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. The ALJ found that Plaintiff retained the residual functional capacity to perform light exertional work with the following limitations: stand/walk up to 6 hours in an 8 hour workday; sit up to 6 hours; and occasional partial (half-way) bending. (Id.) ALJ Stables also determined that Plaintiff had: a slight limitation in her ability to use judgment and make work decisions; a slight to moderate (more than satisfactory) ability to understand, remember, and execute complex instructions, detailed instructions, and interact with supervisors and co-workers; and a moderate (limited but satisfactory) ability to interact appropriately with the public and in

her adaptability to stress and change. At the next step, ALJ Stables concluded that Plaintiff could perform her past relevant work as a cashier, which did not require the performance of work-related activities precluded by her residual functional capacity. (Tr. at 19). As ALJ Stables determined that Plaintiff was not precluded from performing her past relevant work, he did not continue to the final step of this sequential process.

## ISSUES PRESENTED

Plaintiff asserts ALJ Stables erred in refusing to credit her testimony regarding her bowel dysfunction and incontinence.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395

F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

Plaintiff asserts ALJ Stables failed to review records and statements from Drs. Roberto Garcia and Sohail A. Choudri which document Plaintiff's bowel control complaints. Plaintiff contends ALJ Stables cannot deny her benefits because she cannot afford medical care to document further the problems her treating physicians stated she had regarding her bowel control problems. Plaintiff also contends the ALJ chose not to believe her about her uncontrolled bowel movements, despite "clear findings" by her treating physicians. (Pl.'s Br., p. 6). Plaintiff avers her condition may very well be controllable or remediable, but she is excused from non-compliance because she cannot afford to return to her gastroenterologist. Plaintiff alleges ALJ Stables was presented with evidence from her treating physician that she needed to return to her gastroenterologist but could not afford to do so, and, instead of addressing this evidence, the ALJ found her to be not credible in her allegations. Plaintiff concludes that, if the evidence regarding her uncontrolled bowel movements is credited, the vocational expert's opinion was that there were not jobs which existed in significant numbers in the national economy Plaintiff could perform.

Defendant contends Plaintiff's challenge to ALJ Stables' Step Four determination that she could perform her past relevant work, as it is performed in the national economy, is unavailing. Defendant asserts the ALJ specifically asked the vocational

AO 72A
(Rev. 8/82)

5

expert about the impact of the need to wear adult diapers, which the vocational expert stated would not prevent the performance of work as a cashier. Defendant also asserts Plaintiff's contention that medical evidence demonstrates her gastrointestinal problems are uncontrollable is not supported by the record. Defendant alleges Plaintiff had no complaints of change in bowel habits when she began treatment with Dr. Travis Paul. Defendant also alleges that, although Plaintiff reported irregular bowel movements to Dr. Choudri, she told Dr. Paul she had no gastrointestinal symptoms just four (4) months later. Defendant further contends Plaintiff denied any changes in her bowel habits to Dr. Garcia. Defendant asserts Dr. Garcia's notes do not contain a finding that Plaintiff had uncontrolled bowel movement; rather, Dr. Garcia merely recited Plaintiff's subjective complaints. Defendant alleges the legal issues involved in this case do not involve Plaintiff's inability to afford treatment or of her non-compliance with treatment. Defendant avers the totality of the evidence does not support Plaintiff's contention that she suffers from uncontrollable bowel movements, and, accordingly, she has failed to demonstrate an inability to return to her past relevant work as a cashier.

Under the Act, a plaintiff bears the burden of proving that she cannot perform her past relevant work. Hennes v. Comm'r of Soc. Sec. Admin., 130 Fed. Appx. 343, 346 n.3 (11th Cir. 2005) (citing Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991)). "In determining whether a claimant can return to her past relevant work, the ALJ must determine the claimant's [residual functional capacity], using all relevant medical and other evidence in the record." Id. (citing Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir.2004)). Although not required "the regulations provide that the services of vocational experts or vocational specialists may be used in making this determination

because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.'" Id. (quoting 20 C.F.R. § 404.1560(b)(2)). If a plaintiff can still perform the kind of work she has done in the past, she will be found "not disabled" within the meaning of the Act. 20 C.F.R. § 404.1520(e); Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). However, a plaintiff need only retain the ability to perform her past kind of work, not the specific job she held in the past. If a plaintiff cannot perform her past relevant work, the burden shifts to the ALJ to prove that other work exists in the national economy which the plaintiff can perform. Id.

ALJ Stables found Plaintiff retained the residual functional capacity to perform her past relevant work as a cashier II, a light, unskilled job, as this job was generally performed in the national economy. In reaching this conclusion, ALJ Stables found Plaintiff's assertions of uncontrollable bowel movements to be not fully credible for several reasons. First, ALJ Stables noted Plaintiff's subjective allegations of poor bowel control were not supported by the objective medical evidence of record. Specifically, ALJ Stables found the medical evidence of record supported a finding that Plaintiff's status-post excision of squamous cell carcinoma of the nose, reflux disease, hiatal hernia, status-post laparoscopic cholecystectomy, hypertension, and weight gain did not medically impact Plaintiff's ability to perform work-related functions and were not considered severe impairments.

ALJ Stables also stated testing performed by Dr. Marc Eaton, a psychologist, was significant because the Computerized Assessment of Response-Bias ("CARB")

revealed poor or incomplete effort. Specifically, Dr. Eaton determined Plaintiff's effort was significantly below that expected in well-motivated normal controls and persons with verified brain injuries. ALJ Stables noted Dr. Eaton's remark that it was highly unlikely that even an individual who has sustained a severe brain injury would perform this poorly in the absence of symptom-exaggeration or issues of malingering. (Tr. at 17). Dr. Eaton also remarked that the Word Memory Test ("WMT") revealed extreme exaggeration or response-bias and that three separate measures on the WMT which were sensitive to response-bias were below the normal range and provided strong evidence of systematic response-bias. ALJ Stables observed that, according to Dr. Eaton, many individuals known or suspected of malingering responded in the same fashion Plaintiff did, and that it was "almost certain" litigation or other issues of primary or secondary gain were motivating factors in Plaintiff's response bias. (Id.).

Finally, the ALJ noted the vocational expert's testimony that Plaintiff could return to her past relevant work as a cashier as this job is generally performed in the national economy. The ALJ also noted the vocational expert testified Plaintiff could perform her work as a cashier as it is generally performed in the national economy, even if she had poor bowel control, which the ALJ found to be alleged but unsupported by the medical evidence.

ALJ Stables' determination that Plaintiff could perform her past relevant work as a cashier, as this job is performed in the national economy, is supported by substantial evidence. Even though Plaintiff alleges her treating physicians found her to have irregular bowel movements, the record belies this allegation. Drs. Garcia and Choudhri noted Plaintiff's *subjective* complaints of uncontrollable bowel movements; however, as

AO 72A
(Rev. 8/82)

8

Defendant correctly notes, Drs. Garcia and Choudhri did not find or opine that Plaintiff suffered from uncontrollable bowel movements. (e.g., Tr. at 133 and 292). In fact, the record is bereft of any evidence to support Plaintiff's subjective allegations of uncontrollable bowel movements, nor has Plaintiff pointed to any objective evidence to support her allegations.[2] ALJ Stables also presented a hypothetical to the vocational expert if a person who had to wear protection for incontinence problems could perform work as a cashier, as this job is generally performed in the national economy; the vocational expert testified that this hypothetical individual could perform this work.[3] (Tr. at 339). Because Plaintiff was unable to meet her burden that she could not perform her past relevant work, the burden never shifted to the ALJ to show that other work Plaintiff could perform existed in the national economy. Hennes, 130 Fed. Appx. at 346.

---

[2] Plaintiff's assertion that ALJ Stables denied benefits to her "because she cannot afford more medical care to prove to him what her treating doctors have already said; (sic) that she has uncontrolled bowel movements following her colon resection" (Pl.'s Br., p. 7), is a bit of a red herring. The only mention ALJ Stables made concerning Plaintiff's financial situation was what Plaintiff alleged during the hearing. (Tr. at 14).

[3] The undersigned notes Plaintiff testified during the hearing she had "constant diarrhea at times" (Tr. at 314), and that she spends most of her time in or near a bathroom (Tr. at 317). Plaintiff's attorney asked the vocational expert at the hearing about an individual who had more severe problems than the ALJ asked about, and the vocational expert testified this individual could not perform work as a cashier, as this job is performed in the national economy. (Tr. at 340). However, the ALJ was not required to even utilize the services of a vocational expert, much less include allegations which were unsupported by objective evidence in his hypothetical questions posed to the vocational expert. See Heppell-Libsansky v. Comm'r of Soc. Sec., 170 Fed. Appx. 693, 699 (11th Cir. 2006) (reasoning that a claimant's subjective allegations, which were unsupported by objective medical evidence, need not be included in a hypothetical posed to a vocational expert).

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 26th day of October, 2007.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE